Eastern District of Kentucky
FILED
DEC 27 2007
AT LONDON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL NO. 06-338-REW

WILMA OAKES                                                     PLAINTIFF

VS:                         OPINION AND ORDER

MGM COLLECTION AGENCY, INC.                                     DEFENDANT

\* \* \* \* \*

Plaintiff Wilma Oakes entered into an agreement in 1996 to pay $4,244.00 in burial expense to L.P. Jones & Sons, Funeral Home, Inc. of Williamsburg, Kentucky. *See* DE# 1 ¶ 2 (hereinafter "Complaint"). L.P. Jones & Sons hired Defendant MGM Collection Agency, Inc. in 1998 after Oakes failed to satisfy the debt. In January 2000, the funeral company assigned its rights in the outstanding debt to MGM. *See id.* ¶ 4. Oakes alleges that MGM's relevant collection practices concerning the debt violated multiple provisions of the Fair Debt Collection Practices Act (hereinafter "FDCPA" or "Act"). MGM contests the charges and asserts that Plaintiff's claims are baseless and time-barred.

Pursuant to the parties' agreement under 28 U.S.C. § 636(c), the District Court transferred the case to the undersigned for all proceedings and final disposition. *See* DE# 13. Pending before the Court are cross-motions for summary judgment. *See* DE## 34-35. Having considered the briefs, *see* DE## 34-36, the record, and applicable federal law, the Court GRANTS, in part, and DENIES,

1

in part, Defendant's summary judgment motion. The Court DENIES Plaintiff's cross-motion for summary judgment.

## I. Background

Oakes originally owed $4,244.00 to L.P. Jones & Sons pursuant to a 1996 burial-expense agreement. *See* Complaint ¶ 2. The original contract terms provided that Oakes would pay half the amount fifteen days from the date of the agreement and the balance thirty days thereafter. Interest on the debt accrued at 18% per annum. *See id.*

L.P. Jones & Sons hired MGM in 1998 after Oakes failed to timely pay the debt, and in January 2000, L.P. Jones & Sons assigned its contract rights to MGM. The record indicates that Plaintiff owed $2,674.16 at the time of the assignment. *See id.* ¶ 4; DE# 2 ¶ 3 (hereinafter "Answer"). In November 2002, MGM obtained a default judgment in Whitley District Court against Plaintiff for the foregoing amount, with interest at the contract rate (and from the original 1996 due-date) of 18% per annum.[1] *See* DE# 34 Exhibit 1 (Whitley District Court Judgment). Defendant bases its debt calculations in this matter on the November 2002 judgment.

Since MGM's involvement began in 1998, Oakes alleges that she "has received numerous annoying and sub-rosa threatening telephone calls and pieces of correspondence from Defendant." *See* Complaint ¶ 10. Plaintiff documents fifteen written communications, and the Complaint and Plaintiff's summary judgment motion also identify a "Legal Account Ledger" that Oakes apparently received on or about June 2005, although a copy of the ledger is not in the record. *See* DE# 35-2 at 6-8 (hereinafter "Pl. Supporting Memo")(citing Exhibits A-O); *see also* Complaint ¶ 6 (describing

---

[1] The default judgment also awarded $101 in costs and $200 in attorney fees to MGM. *See* DE# 34 Exhibit 1 (Whitley District Court Judgment).

2

"Legal Account Ledger") and Pl. Supporting Memo at 2 (same). Oakes identifies no additional written correspondence that purportedly violated the FDCPA.

Furthermore, Defendant confirms at least sixty attempted phone calls between Oakes and MGM from June 1998 to February 2006.[2] *See* DE# 34-2 at 6 (hereinafter "Def. Supporting Memo"). The Complaint and Plaintiff's summary judgment motion, however, specify neither the date or substance of any particular phone conversation. At best, Oakes stated in an interrogatory response that an MGM employee named George Davis told Oakes that "she could be incarcerated if she failed to discharge the debt." *See* DE# 22 (Answer to Interrogatory #7); *see also* 15 U.S.C. § 1692e(4). The interrogatory response did not identify the date of that conversation. Oakes generally characterized all other phone conversations as "rude" or "threatening." *See* DE# 22 (Answer to Interrogatories #4, #9, & #10).

Plaintiff's attorney additionally states that he contacted MGM in February 2006 requesting a debt validation, and he subsequently received two objectionable communications from MGM's "Legal Director," C. Rodrick Holmes. *See* DE# 35 Exhibits N-O. Counsel complains that Holmes is not a licensed attorney and that Holmes also improperly failed to appear for a deposition, demonstrating "bad faith."

The Court has evaluated the full record, as presented. The Court notes that Plaintiff did not file a separate response to MGM's summary judgment filing. Additionally, the record shows limited

---

[2] Defendant reports that MGM initiated only sixteen phone calls that actually resulted in contact with Oakes. *See* Def. Supporting Memo at 7. Oakes does not dispute Defendant's phone call data. Indeed, Oakes failed to respond specifically to many of the arguments presented, often leaving the Court no option but to treat particular allegations as uncontroverted.

depth and development, with no deposition testimony available. Despite the record's deficits, the Court endeavors to address and resolve the issues presented.

## II. Issues

Plaintiff alleges that MGM's communications were deceptive, misrepresented the amount of her debt, and/or falsely implied that a communication was from an attorney, all in violation of the FDCPA. *See* 15 U.S.C. § 1692e(2)-(3). Oakes also charges that MGM failed to provide proper notice regarding debt validation, within five days from MGM's "initial communication," as mandated by § 1692g.[3]

Defendant asserts primarily that the Act's one-year statutory limitation period bars Plaintiff's claims, *see* 15 U.S.C. § 1692k(d), but MGM alternatively maintains that its communications complied with the Act. MGM also contends that the Act does not apply to the February 2006 exchanges involving Plaintiff's attorney, and Defendant argues that the record contains no evidence showing that any phone conversation(s) violated the FDCPA. Where relevant, the Court applies a "least sophisticated" consumer/debtor standard to determine whether a communication violated the Fair Debt Collection Practices Act. *See, e.g., Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007).

## III. Summary Judgment Standard

Per Rule 56, a federal court properly grants a summary judgment when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that no

---

[3] Oakes additionally indicates that the original debt assignment was invalid because MGM allegedly provided no consideration to its assignor. MGM obtained a default judgment against Oakes in Whitley District Court, and this Court does not evaluate the underlying assignment, which the state judgment, still in effect, subsumes.

4

genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The nonmoving party must thereafter produce specific facts demonstrating a genuine issue for trial. *See id.*

There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986). Likewise, judgment as a matter of law is appropriate where the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which the nonmoving party has the burden of proof. *See Celotex Corp.*, 106 S.Ct. at 2552. On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *See Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004). A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *See id.* at 451-52.

Notably, "The district court is not required to search the record to determine whether genuine issues of material fact exist where the nonmoving party has failed adequately to respond to a

5

summary judgment motion." *Young v. City of Cleveland,* 2000 WL 924590, at *2 (6th Cir. June 26, 2000); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the trial court may rely on the "facts presented and designated by the moving party." *See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir.1992). "If the role of the trial court was not limited in this way, the trial court would be compelled to search all the materials submitted for genuine issues of material fact, develop legal theories and generally champion the position of the nonmoving party." *Young,* 2000 WL 924590, at *2 (citing *Guarino,* 980 F.2d at 405-07).

## IV. Analysis

### A.

Oakes vaguely alleges that she received "numerous" offending telephone calls and letters from Defendant. *See* Complaint ¶ 10. The Court begins its analysis by identifying the precise communications apparently in controversy.

First, this case primarily involves correspondence. The Complaint and Plaintiff's summary judgment motion also include unspecific references to telephone calls. *See* Complaint ¶ 10 and Pl. Supporting Memo at 3; *see also* DE# 22 (Answers to Interrogatories #4, #7, #9, & #10). However, Plaintiff's conclusory and unsupported references to "rude" and "threatening" telephone calls are plainly insufficient at this stage of the case. *See Celotex Corp.,* 106 S.Ct. at 2552 (mandating summary judgment if a "party has failed to make a sufficient showing on an essential element" of the case, "and on which that party will bear the burden of proof at trial"); *see also McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990)(noting "mere conclusory allegations are not sufficient to withstand a motion for summary judgment"). The Court rejects any FDCPA claim premised on a call Plaintiff cannot describe, date, and specifically characterize. At best, Oakes

alleges that an MGM employee named George Davis warned Oakes in a phone conversation that "she could be incarcerated if she failed to discharge the debt." *See* DE# 22 (Answer to Interrogatory #7). No other specified phone calls or conversations are at issue on summary judgment.

Second, alleged written correspondence from MGM that is neither adequately documented or specifically identified may not support an FDCPA cause of action. *See Celotex Corp.*, 106 S.Ct. at 2552 (requiring a "sufficient showing" to avoid summary judgment). In this case, Plaintiff documents thirteen written communications sent by MGM to Oakes between June 1998 and December 2005, and the record includes two additional communications directed to Plaintiff's attorney in February 2006. *See* DE# 35 Exhibits A-O. Both the Complaint and Plaintiff's summary judgment motion also describe a "Legal Account Ledger" that Oakes apparently received on or about mid-June 2005, but a copy of the ledger apparently is not available. *See* Complaint ¶ 6 (describing "Legal Account Ledger") and Pl. Supporting Memo at 2 (same). Aside from these sixteen communications, Plaintiff fails to identify particularly (and adequately) other written communications that may be actionable. *See Celotex Corp.*, 106 S.Ct. at 2552. The Court appropriately limits its analysis to the specified matters.

B.

The Court next considers whether the FDCPA applies to the two February 2006 exchanges from MGM's "Legal Director" to Plaintiff's counsel. *See* DE# 35 Exhibits N-O. Because the MGM official was not a licensed attorney, Plaintiff claims the correspondence violated § 1692e(3), which prohibits a false representation that an individual is an attorney or that a communication is from an attorney. MGM denies that the designation "Legal Director" violates § 1692e(3), but Defendant also asserts that the Act is inapplicable because MGM directed the communications to debtor's counsel

7

– not to Oakes. *See id.* The record, in fact, features no indication that Oakes herself was aware of the February 2006 correspondence. There is no evidence showing that Oakes received the letters.

Federal courts are divided over whether the FDCPA applies to communications directed exclusively to a debtor's attorney. *Compare Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007)("[W]e hold that communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the Act."); *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002)("[A]lleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA.") *with Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007)("Thus, plainly, the FDCPA covers communications to a debtor's attorney."); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773-75 (7th Cir. 2007).

The Sixth Circuit previously rejected an FDCPA claim, premised on § 1692e(3), where the communication was made to a "debtor's attorney rather than the debtor herself." *See Wolf v. Javitch, Block, Eisen, & Rathbone, LLP*, 2004 WL 3964424, at *2 (6th Cir. Dec. 16, 2004)("Wolf has not cited to any authority which would support relief under § 1692e(3) under circumstances where the false representations were made to a debtor's attorney rather than the debtor herself."). *Wolf* plainly provides substantial guidance on these facts, even if the unpublished case technically is non-binding authority. *Wolf* noted the lack of authority extending the Act to attorney communications. The Court has carefully surveyed the reported cases and agrees that the weight and persuasive force of authority is in MGM's favor on this issue.[4] *See Guerrero*, 499 F.3d at 936 (surveying authority). The Act's purpose and language do not apply in this scenario, where the collector communicates directly and

---

[4] Again, Plaintiff did not directly address this *critical* scope question.

8

exclusively with a debtor's attorney, in response to inquires from that attorney. Based on this analysis and *Wolf*, the Court finds that the February 2006 communications received by Plaintiff's attorney support no FDCPA claim.

Due to this threshold decision, the Court need not resolve whether the designation "Legal Director" actually violates or could violate § 1692e(3).

C.

MGM's primary defense is the FDCPA statute of limitations. *See* 15 U.S.C. § 1692k(d). Section 1692k(d) provides:

> An action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs.

*Id.* Plaintiff filed suit against MGM in this District on August 3, 2006, basing all claims on FDCPA noncompliance. The one-year limitation period thus encompasses violations that occurred on August 3, 2005 or later.[5] *See* Complaint. A December 2005 account statement is the *only* communication that is in controversy, subject to the FDCPA, and within the August 3 2005-August 3, 2006 time frame.[6]

---

[5] Whether a "violation occurs" on the date a debt collector sends a written communication or on the date a debtor receives the communication is a debated question. *See Ison v. Javitch, Block & Rathbone*, 2007 WL 2769674, at *7 (S.D. Ohio Sept. 18, 2007)(collecting cases). The issue is immaterial in this case because either approach produces the same analytical result.

[6] Again, the February 2006 communications directed to Plaintiff's attorney provide no basis for relief under the Act. *See* Part IV.B. *supra*. MGM also reports that it sent five additional communications to Oakes after August 3, 2005, but the December 2005 account statement is the only communication particularly identified by Plaintiff and thus in controversy. *See* Def. Supporting Memo at 9. Among the written communications actually at issue, a "Legal Account Ledger" that Oakes received on or about June 2005 is the next most recent correspondence that is either documented or identified by Plaintiff. *See* Complaint ¶ 6 (describing "Legal Account Ledger") and

9

Even though § 1692k(d) is MGM's central defense, Oakes gives the provision limited attention. Regarding the limitation period, Oakes states:

> Plaintiff alleges that her complaint was timely filed as Defendant's violations constituted a continuing pattern and course of conduct as opposed to unrelated discrete acts that continued well within the limits of the statute of limitations[.]

*See* Pl. Supporting Memo at 6. Oakes essentially attempts to bypass the strictures of § 1692k(d) by invoking the "continuing violation doctrine." *See Joseph v. J.J. MacIntyre Co.*, 281 F.Supp.2d 1156, 1161 (N.D. Cal. 2003).

Although Oakes cites no authority and presents no analysis, *Joseph* is the leading FDCPA case that has applied the doctrine. The case involved "over 200 calls" to a debtor's residence in a "nineteen-month" span, but only about seventy-five of the 200 calls fell within the limitation period. *See id.* at 1161-62. The court found that the concentration of phone calls was "sufficient . . . to constitute a pattern of related conduct, triggering the continuing violation doctrine." *See id.* at 1162.

Subsequent decisions have construed *Joseph* and the continuing violation doctrine quite narrowly, finding the theory "is applicable" only in cases where the "defendant engaged in a large number of similar acts." *See Camacho v. Nat'l Credit Adjustment Agency*, 2007 WL 760416, at *2 (E.D. Wash. Mar. 8, 2007); *see also Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360 (S.D. Fla.

---

Pl. Supporting Memo at 2 (same). Thus, all written communications about which Plaintiff complains – aside from the December 2005 account statement – are plainly outside the statutory limitation period.

Finally, Oakes alleges that an MGM employee named George Davis warned Oakes in a phone conversation that "she could be incarcerated if she failed to discharge the debt." *See* DE# 22 (Answer to Interrogatory #7); *see also* 15 U.S.C. § 1692e(4). MGM, however, established that George McNulty, a/k/a George Davis, last worked as an MGM employee on May 31, 2005. *See* DE# 34 Exhibit 3. Irrespective of whether McNulty/Davis made the comment, which is in dispute, the record shows that any claim centered on that comment is time-barred. Plaintiff adequately presents no other telephonic communications for analysis.

10

2000)(focusing on communications falling within the limitation period); *Purnell v. Arrow Fin. Servs., LLC*, 2007 WL 421828, at *2-4 (E.D. Mich. Feb. 2, 2007)(same). The distinction is relevant in this case.

Here, Plaintiff identifies, at most, fourteen offending letters/correspondence from MGM, ranging from September 1998 to December 2005.[7] *See* DE# 35 Exhibits A-M; *see also* Complaint ¶ 6 (describing "Legal Account Ledger") and Pl. Supporting Memo at 2 (same). Even if all these communications violated the FDCPA (which is doubtful), the quantity and concentration of FDCPA infractions are relatively small compared to *Joseph*. *See Joseph*, 281 F.Supp.2d at 1161-62 (involving "over 200 calls" to a debtor's residence in a "nineteen month" span). Furthermore, the purported violations do not involve "related conduct," as the variety of Oakes's allegations shows. Thus, a) Oakes asserts that some correspondence falsely implies that it was from an attorney; b) Oakes quotes deceptive and intimidating "verbiage" from other communications; c) Oakes claims that some account statements misrepresented Plaintiff's debt; and d) Oakes contends that MGM's "initial communication" failed to comply with § 1692g's notice provisions. Plainly, Oakes's allegations do not demonstrate a "*large* number of *similar* acts." *See Camacho*, 2007 WL 760416, at *2 (emphasis added). Rather, Oakes describes a relatively small and dissipated number of dissimilar acts over a lengthy period. The continuing violation doctrine, as such, and if otherwise availing in the FDCPA sphere, does not apply.[8]

---

[7] Again, the Court's analysis does not consider materials outside the record, *see* Part IV.A. *supra*, or the February 2006 communications to counsel. *See* Part IV.B. *supra*.

[8] In addition, analysis of whether the continuing violation doctrine *could* apply depends solely on the December 2005 account statement, because it reflects the only communication that is within the limitation period. Oakes alleges that the account statement misrepresented the amount of

Section 1692k(d) therefore bars all FDCPA claims premised on pre-August 2005 conduct. The Court now turns to the potential § 1692e(2) action relating *solely* to the December 2005 account statement.

### D.

Oakes contends that the December 2005 account statement falsely represented the amount of her debt, in violation of § 1692e(2). The December 2005 communication itself reported an account balance of $8392.46. *See* DE# 35 Exhibit L; *see also* DE# 25 (Answer to Interrogatory #13)(reflecting ledger sent to Plaintiff in December 2005). Based on a tendered schedule reflecting the underlying debt, accrued interest, and payments by Oakes, MGM asserts that the December 2005 account statement slightly understated Plaintiff's actual debt, if anything. *See* Def. Supporting Memo at 16-17; *see also* DE# 34 Exhibit 6 (schedule). Thus, because any error was minor and would have benefitted Oakes, MGM argues that no FDCPA violation could have occurred.

MGM, however, cites no authority to support its theory, and at least one federal decision has rejected MGM's argument. *See Day v. Check Brokerage Corp.*, 511 F.Supp.2d. 950, 959 (N.D. Ill.

---

Plaintiff's debt. *See* 15 U.S.C. § 1692e(2); *see also* Pl. Supporting Memo at 6-8. Thus, the December 2005 communication is not a "continuing violation" of any substantively distinct FDCPA infractions, as a conceptual matter.

If the Court narrows the doctrine's application to the § 1692e(2) context only, the doctrine would have no impact. Oakes either states or implies that account statements from February 2000, June 2005, and December 2005 were inaccurate. She also indicates that statements from January 2005 and December 2005 have irreconcilable account balances. As such, § 1692e(2) liability involves, at most, only four separate communications between February 2000 and December 2005. Moreover, the purported § 1692e(2) violations appear to have no relationship to each other. Four, random § 1692e(2) violations in a five-year period would not justify the doctrine's application.

The Court doubts application of the doctrine in the Sixth Circuit. The theory derives from the employment law context, and the Sixth Circuit has significantly limited its availability there. *See, e.g., Dendinger v. Ohio*, 207 Fed. Appx. 521, 526 (6th Cir. 2006)(requiring a "series" of non-discrete acts). A short, episodic list of distinct FDCPA violations over a 5+ year span would be a poor candidate for the continuing violation doctrine in this Circuit.

2007). According to *Day*, an incorrect amount is still *false*, even if the debtor actually owes more than the communication reports. *See id*. Thus, per the Act, a communication contains a misrepresentation whether the amount indicated in the communication overstates or understates the actual amount due. *See id*.

Furthermore, the balance reflected by the December 2005 account statement (which actually is undated) is *materially* different from the amount reflected in a January 2005 account statement, which reported a balance of $1,049.16.[9] *See* DE# 35 Exhibit A (January 2005 statement). Based on these conflicting account balances, there is a genuine issue of material fact regarding the accuracy of the December 2005 account statement.[10] *See* Fed. R. Civ. P. 56(c). The Court thus denies summary judgment on this narrow and limited issue.

Liability under § 1692e(2)(A) is strict, and the Act makes falsity actionable. The Court thus will permit the claim, as to the December 2005 report, to go forward. This is not without great hesitancy. Plaintiff's proof on the document date and import of the December 2005 ledger is thin, and the Court will scrutinize the claim very closely at trial. Further, at trial, MGM will have an opportunity to prove its affirmative defense under § 1692k(c); the record at this stage does not permit full evaluation of the bona fide error defense. Any error certainly was de minimis, relative to the

---

[9] Even though § 1692k(d) bars an independent § 1692e(2) claim premised on the January 2005 account statement, the January 2005 statement may still be admissible for evidentiary purposes. *See Joseph*, 281 F.Supp.2d at 1162.

[10] Indeed, Defendant's own calculations suggest that the December 2005 statement is incorrect, even though MGM contends the error is small. *See* DE# 34 Exhibit 6 (schedule). MGM's calculations further confirm that the debt reported in early 2005 was grossly inaccurate. Notably, the failure to date the December 2005 notice would seem to be the fault of the issuer.

13

actual debt owed. MGM's trial proof may even show that no error existed, but at this juncture, the Court cannot resolve the final claim as a matter of law.

## V. Conclusion

For the reasons stated, the Court ORDERS:

1) Defendant's motion for summary judgment is GRANTED, in part, and DENIED, in part, excepting whether the balance reported in the December 2005 account statement violated 15 U.S.C. § 1692e(2) under the applicable FDCPA standard; and

2) Plaintiff's motion for summary judgment is wholly DENIED.

This the 27th day of December, 2007.

**Signed By:**
*Robert E. Wier* REW
**United States Magistrate Judge**